Olivia GARZA, Independent Executrix,
Appellant,

v.

C–G–R, INC., et al., Appellees.

No. 15399.

Court of Civil Appeals of Texas,
San Antonio.

March 19, 1975.

Rehearing Denied April 16, 1975.

Cobb, Thurmond, & Bain, Inc., Earle Cobb, Jr., San Antonio, for appellant.

Remy, Schiller & Bayern, William E. Remy, Arthur H. Bayern, San Antonio, for appellees.

BARROW, Chief Justice.

Olivia Garza, Independent Executrix of the Estate of Gilbert R. Garza, deceased, has perfected her appeal from a take-nothing judgment entered after an instructed verdict in her suit to recover funds allegedly owed the estate under a Stock Purchase and Redemption Agreement entered into by Gilbert R. Garza and appellees, Daniel A. Cerna and Larry J. Raba, at the time C–G–R, Inc. was incorporated.

Prior to January 12, 1971, Cerna, Raba and Garza were in a partnership engaged in performing architectural and engineer-

ing services. On that date they incorporated as C–G–R, Inc., and in connection therewith, entered into a Stock Purchase and Redemption Agreement to restrict the transfer of the stock of each of the three stockholders. Paragraph No. 5 relates to "Death of Stockholder"[1] and provides in substance that on the death of a stockholder, his legal representative shall be obliged to sell to the corporation the decedent's stock at a price equal to the adjusted book value as of the last day of the month preceding his death plus a pro rata share of 90 per cent of the accounts receivable at such time, provided, however, that in the event that the corporation's certified public accountant determines that such value is less than $70,000.00, the corporation shall be obliged to purchase the shares of decedent for the sum of $70,000.00 cash. To carry out this agreement, the corporation carried life insurance policies on each of the three stockholders in the face amount of $70,000.00 each.

Gilbert R. Garza died on November 11, 1972, and his widow qualified as independent executrix. Andrew J. Beaver, Jr., a certified public account (CPA) had handled the corporation's books from the outset, and prior thereto, had handled the books for the partnership. After Garza's death, Beaver made an unaudited report as of October 31, 1972, and determined that the value of Garza's stock as per the agreement was $36,683.52. This value was not satisfactory to Mrs. Garza, and she had Beaver make an audited report of the company's financial condition. Based on this audited report, he determined that the value of Garza's stock was slightly less than the unaudited value. The sum of $70,000.00 was paid Mrs. Garza and the stock transferred to appellees with the understanding that her acceptance of this amount was without prejudice to her claim for a greater sum.

This suit was originally filed against appellees wherein it was alleged that Beaver's audit did not properly reflect the value of the corporation in that certain assets were omitted or understated and certain expenses were overstated. By a supplemental petition, Mrs. Garza joined Beaver as a defendant and alleged that he had rendered a false, misleading or mistaken account and that his acts constituted negligence as well as a breach of contract. It was also alleged in the supplemental petition that defendants had concealed and withheld information as to assets and that they had intentionally and with the intent to deprive appellant of her rights, under-

1. "5. DEATH OF STOCKHOLDER. (a) On the death of a Stockholder while owning stock in the Corporation, his executors or administrators shall be obliged within 30 days after their qualification to offer to sell to the Corporation all the stock of the decedent at a price equal to the adjusted book value of the deceased Stockholder's shares as of the last day of the month preceding the date of death of the deceased Stockholder plus 90% of that portion of the accounts receivable as of the last day of the month preceding the date of death of the deceased Stockholder as the number of shares of stock of the Corporation owned by that Stockholder bears to the total number of shares of stock of the Corporation then outstanding, provided, however, that in the event that the Corporation's certified public accountant determines that such price is less than $70,000.00 the Corporation shall be obliged to purchase all of the shares of the decedent for $70,000.00 cash. Said price shall be delivered to the executors or administrators of the decedent within 60 days after the receipt of such offer and the executors or administrators of the decedent shall vote, and take any other necessary action, in accordance with the election of the majority of the remaining Stockholders.

(b) In the event the Corporation's certified public accountant has determined the price to be in excess of $70,000.00, the $70,000.00 cash will be paid as provided in subparagraph (a) above and the excess over $70,000.00 shall be paid in not less than 4 equal annual installments beginning with one year from the date that the $70,000.00 cash is paid to the decedent's executors or administrators. The Corporation reserves the right at any time to prepay without penalty all or any part of said excess over $70,000.00. Interest at the rate of 6% per annum shall accrue on the unpaid balance of the purchase price in excess of $70,000.00 from and after the date of payment of the $70,000.00 cash."

stated the value of all assets. The trial court severed the claim against Beaver from the suit against appellees and proceeded to trial before a jury on the claim against appellees. At the close of appellant's case, the trial court granted appellee's motion for an instructed verdict that plaintiff take nothing.

Appellant asserts fifteen points of error. Eleven of these points complain of procedural matters relating to the trial of the case, and she concedes that any error is harmless unless appellant has introduced evidence either in the record or by bill of exception that the value of Garza's stock as of October 31, 1972, is in excess of $70,000.00. Appellant seeks to establish this value by her points Nos. 7–10, and we will therefore consider them at the outset.

These points relate primarily to the meaning of "adjusted book value" as used in the Agreement. Appellant asserts that Beaver erred in considering only the cash surrender value of the three life insurance policies in lieu of the face amount of the policy on Garza's life. Also, she urges that no consideration was given by Beaver to the value of the corporation's goodwill. It is also asserted that Beaver understated the value of the corporation's physical properties by using their depreciated value rather than their market value and that an excessive amount of income was deferred for future tax liability.

■ The term "book value" has a definite meaning in the accounting profession; however, there was no testimony as to the specific meaning of "adjusted book value." Rather, it is apparent that, as indicated by the testimony of Beaver and appellant's expert witness, the meaning of this term varies from account to account depending on what items are to be adjusted. The Agreement of the parties clearly contemplated that this value would be determined in this matter by the corporation's CPA, that is, by Beaver. The evidence establishes that he had handled the corporation's books for several years and that the term "adjusted book value" had a definite meaning to him and to the parties to the Agreement. Beaver testified that the adjusted book value was computed at the close of each corporate year and that he determined the adjusted book value as of October 31, 1972, in the same manner as he had determined it in prior years. Specifically, he adjusted the book value primarily as follows: by correcting any posting errors of the bookkeeper, by computing the annual depreciation of all physical assets, and by adding the increase in cash value of the corporation's life insurance policies. He also deducted all sums drawn during the year by each stockholder. The uncontradicted record is that these same adjustments were made to the book value at the close of each prior year of the corporate or partnership business.

Appellant called Mr. Derflinger, a certified public accountant, as an expert witness, and he testified by bill of exception [2] that the above method of arriving at the value of Garza's stock did not measure its true value. He valued Garza's stock as somewhere between $95,485.25 and $132,844.41. Derflinger's increase over Beaver's valuation was largely brought about by his considering the face amount of Garza's life insurance policy in lieu of the cash surrender value of all corporate policies, by increase in the valuation of physical assets by estimating the market value of same in lieu of the depreciated value which was used for tax purposes, by considering the value of work in progress but unbilled at the time of Garza's death, and by reducing the reserve for deferred income tax liability. He admitted that in doing so, he actually determined the "fair market value" of the stock rather than its "adjusted book value."

2. The trial court concluded that the parties were bound by the findings of the corporation's CPA in the absence of fraud or bad faith, and excluded most of this witness' testimony.

It is seen that the Agreement specifically authorizes the corporation's CPA to add to the adjusted book value a sum equal to the deceased stockholder's pro rata share of 90 per cent of the accounts receivable as of the last day of the month preceding the date of death. There is no authority given by the Agreement for consideration of any sum for the value of work in progress, but unbilled. In view of the specific agreement regarding accounts receivable, the trial court did not err in excluding the testimony as to the value of the work in progress.

The trial court also properly excluded testimony as to the face value of the policy on Garza's life. The Agreement expressly provides for computation of the adjusted book value as of the last day of the month preceding the stockholder's death. At this time the policy on Garza's life, as well as the other policies owned by the corporation had only a cash surrender value.

None of the other alleged understatement of assets or overstatement of liabilities would make any significant difference in the value of Garza's stock as of October 31, 1972, in that it increased by approximately $18,000.00 at the most. The value of Garza's shares would thus remain substantially below the $70,000.00 heretofore paid appellant. Therefore, it is unnecessary to determine if Beaver erred in considering the depreciated value of the physical assets, as well as the amount of deferred income tax. Reversible error is not shown by appellant's points seven through ten.

The other eleven points complain of procedural errors which are harmless error unless she can show potential value in excess of $70,000.00 for Garza's stock. She has failed to do so; therefore, it is unnecessary to consider these points.

The judgment of the trial court is affirmed.